UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| THE STATE OF LOUISIANA ET AL | CASE NO.  6:22-CV-01934 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| HORSERACING INTEGRITY & SAFETY AUTHORITY INC ET AL | MAGISTRATE JUDGE PATRICK J. HANNA |

**MEMORANDUM RULING**

Pending before the Court is Plaintiffs'[1] Motion for a Preliminary Injunction [Doc. No. 2]. Plaintiffs base their Motion on a number of claims against the implementation of various rules proposed by the Defendants[2], Horseracing Integrity and Safety Authority ("HISA"). Plaintiffs claim that the three sets of regulations from HISA must be enjoined because "they suffer from fatal flaws under the Administrative Procedure Act ("APA") or contradict constitutional guarantees."[3] This opinion only addresses whether the rulemaking by HISA and the Federal Trade Commission ("FTC") was lawful.

Thus, Plaintiffs seek a preliminary injunction to prevent the enforcement of HISA's rules in order to protect the regulated persons' rights and prevent irreparable harm.

For the following reasons, Plaintiffs' Motion is **GRANTED**.

---

[1] There are several groups of Plaintiffs in this case, collectively known as "Plaintiffs." "State Plaintiffs" are the State of Louisiana and the State of West Virginia. "Plaintiff Organizations" are Louisiana State Racing Commission, Louisiana Horsemen's Benevolent & Protective Association 1993 Inc., Louisiana Thoroughbred Breeders Association, Jockeys Guild, Inc., and West Virginia Racing Commission. "Individual Plaintiffs" are Bernard K. Chatters, Edward J. Fenasci, Larry Findley, Sr., Warren J. Haran, III, and Gerard Melancon.
[2] There are numerous Defendants in this case, collectively known as "Defendants." The two "Agency Defendants" are Horseracing Integrity & Safety Authority, Inc. ("HISA") and the Federal Trade Commission ("FTC"). The remaining Defendants are individuals: Lisa Lazarus, Steve Beshear, Adolpho Birch, Leonard S. Coleman, Jr., Joseph DeFrancis, Ellen McClain, Susan Stover, Bill Thomason, D.G. Van Clief, Lina M. Khan, Alvaro Bedoya, Noah Joshua Phillips, Rebecca Kelly Slaughter, and Christine S. Wilson.
[3] [Doc. No. 6, p. 16].

I.      BACKGROUND

A.  The Horseracing Integrity and Safety Act ("the Act")

The Act was first introduced to Congress in 2019, and President Donald Trump signed the Act into law on December 27, 2020.[4] The Act was intended to address problems threatening the horseracing industry under the pre-existing state-by-state regulations.[5] It was to take effect on July 1, 2022.[6] Under the Act, a "private, independent, self-regulatory, non-profit corporation," HISA, was created.[7] The specific purpose of HISA was to develop and implement "a horseracing anti-doping and medication control program and a racetrack safety program for covered" horses, persons, and horseraces.[8]

HISA is funded by the States and racing industry, not by Congress.[9] There are two funding methods available for HISA.[10] The States may either elect to pay through its treasury, or HISA may assess fees under a statutorily specified formula and collect fees directly from covered persons.[11] HISA requires all covered persons to register before participating in covered races or any activities concerning covered horses.[12] When they register, a covered person will receive a registration number and agree to abide by all rules and programs under HISA.[13]

The FTC is charged with sole authority to review HISA's proposed rules and modifications.[14] The FTC is required to publish each proposed rule or modification submitted in

---

[4] [Doc. Nos. 29, p. 12; 27, p. 11].
[5] [Id.]
[6] 15 U.S.C. § 3051(14) (West).
[7] 15 U.S.C. § 3052.
[8] *Id.* at (a).
[9] 15 U.S.C. § 3052(f).
[10] *Id.*
[11] *Id.*
[12] 15 U.S.C. § 3054(d).
[13] *Id.*
[14] 15 U.S.C. § 3053.

the Federal Register and provide an opportunity for public comment.[15] After this, a proposed rule or modification will take effect only if the FTC approves it.[16] The FTC has a total of sixty days from the date of publication in the Federal Register to review any public comments and either approve or disapprove, with a proper explanation.[17] If the FTC disapproves a proposed rule or modification, it shall issue recommendations to HISA for modifications within thirty days, and HISA may resubmit with the modifications incorporated.[18]

HISA was required to establish two programs by the July 1, 2022, effective date: (1) a horseracing anti-doping and medication program and (2) racetrack safety program applicable to all covered horses, persons, and horseraces.[19] These programs were to be issued after the proper approval and public comment periods under the FTC.[20] HISA was further required to issue descriptions on conduct that qualified as rule violations and for civil sanctions.[21] Any of the rules issued by HISA under the authority given to them is to preempt any state law or regulation, but the states and HISA are to cooperate together in the administration of laws.[22]

### B.  Factual History

Prior to July1, 2022, the horseracing industry was regulated solely by the individual states exercising their police powers.[23] There were several proposed legislation attempts to ensure uniform regulation of the industry, but Congress continued the practice of state regulation until recent racetrack fatalities and doping scandals.[24] Congress then changed the regulation

---

[15] *Id.* at (b)(1).
[16] *Id.* at (b)(2).
[17] *Id.* at (c)(1).
[18] *Id.* at (c)(3).
[19] 15 U.S.C. §§ 3055, 3056.
[20] *Id.*
[21] 15 U.S.C. § 3057.
[22] 15 U.S.C. §§ 3054(b), 3060(b).
[23] [Doc. No. 6, p. 7].
[24] [Doc. Nos. 27, p. 15; 29, p. 10].

scheme with the enaction of the Act in December of 2020, and establishment of HISA.[25] It gave

HISA, a private entity, federal regulatory power over the horseracing industry.[26]

  As of the date of this lawsuit, the FTC has only approved three sets of regulations from

HISA: The Racetrack Safety Rule (Rule 2000 Series), The Enforcement Rule (Rule 8000 Series),

and The Assessment Methodology Rule (Rule 8500 Series).[27] The Rule 2000 Series was

submitted for approval in December 2021, along with its over 1,200 pages of comments, and the

FTC published it on January 5, 2022, to receive public comments by January 9, 2022.[28] The FTC

approved the Rule 2000 Series on March 3, 2022, after addressing the comments.[29] The Rule

8000 Series was published for public comments on January 26, 2022, and the FTC approved it

on March 25, 2022.[30] The Rule 8500 Series was published for public comments on February 18,

2022, and the FTC approved it on April 1, 2022.[31] They each had a fourteen-day public comment

period, despite the typical minimum "30 and often 60 days or more for public comment."[32]

Forty-one public comments were submitted for the Rule 2000 Series, twelve public comments

were submitted for the Rule 8000 Series, and ten public comments were submitted for the Rule

8500 Series.[33] Each rule had a detailed order attached explaining the FTC's ruling: forty-eight

pages for the Rule 2000 series, thirty-six pages for the Rule 8000 Series, and twenty-five pages

for the Rule 8500 Series.[34]

---

[25] [Doc. No. 6, p. 7].
[26] [Id.]
[27] [Id.at p. 16-18].
[28] [Doc. No. 27, p. 20-21].
[29] [Id. at p. 21]; [Doc. No. 29, p. 16].
[30] [Id. at p. 22]; [Id. at p. 17].
[31] [Id.]
[32] [Doc. No. 6, p. 17-18], *citing* Fed. Trade Comm'n, Order Approving the Racetrack Safety Rule Proposed
by the Horseracing Integrity and Safety Authority at 2 (Mar. 3, 2022), https://bit.ly/3Nn2ST8 (Racetrack Safety Rule
Order).
[33] [Doc. No. 27, App'x 105, 154, 190 (p. 107, 156, 192)].
[34] [Doc. No. 27, p. 17].

HISA failed to establish the Horseracing Anti-Doping and Medication Control Program by July 1, 2022, as required under 15 U.S.C. § 3055(a)(1).[35] Instead, HISA delayed enforcement of this program until January 2023, and issuance of its rules to the FTC for public comment until July 1, 2022.[36] Several Senators opined this failure to meet deadlines as a major problem with HISA, but HISA has not commented on its authority to delay implementation of this program.[37]

Since its enaction, there have been several civil suits filed in regard to the constitutionality of HISA, which are currently pending appeal in both the Fifth and Sixth Circuit.[38] The first was in March 2021, three months after HISA's enactment, in the Northern District of Texas, and Plaintiff Louisiana Horsemen's Benevolent and Protective Association ("Louisiana HBPA") was a plaintiff in this suit.[39] There was a similar suit in the Eastern District of Kentucky, and the State Plaintiffs in this case, Louisiana and West Virginia, were plaintiffs in the suit.[40] After being litigated for over a year in these two other federal district courts, the district courts upheld the Act.[41]

In upholding the Act, the federal district courts determined HISA is "well within constitutional boundaries."[42] Both courts denied the plaintiffs' motions for summary judgment and dismissed all claims with prejudice, ruling that the Act does not violate the "private nondelegation doctrine."[43] Both courts also rejected the due process objections, and the Eastern District of Kentucky rejected a Tenth Amendment challenge.[44] Neither of the litigations or

---

[35] [Doc. No. 6, p. 19].
[36] [Id.], *citing* Enforcement Rule Order at 5 n. 13.
[37] [Id. at p. 20].
[38] [Id. at p. 11].
[39] [Doc. Nos. 27 at p. 23; 29, p. 14].
[40] [Id.]
[41] [Doc. No. 27 at p. 23].
[42] [Doc. No. 29, p. 10], *citing Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, No. 5:21-CV-071-H, 2022 WL 982464, at *10 (N.D. Tex. Mar. 31, 2022).
[43] [Doc. No. 27, p. 24].
[44] [Id. at p. 24-25].

appeals had injunctive relief sought.[45] This suit is the third attempt at stopping enforcement of HISA but the first to address the legality of the rules enacted.[46]

Since the above rules have gone into effect, there have been 26, 242 people and 30, 484 horses registered under the Act.[47] There are voluntary implementation arrangements with eighteen of the twenty-two states conducting covered horseraces.[48] Appointed stewards are enforcing the rules in the other four states.[49] Specifically in Louisiana, no horses have been prohibited from racing because of the rules because HISA is electing to give violators forty-eight hours to provide proof of registration before taking further enforcement action.[50]

### C.  Procedural History

Plaintiffs filed their complaint against HISA and the other Defendants in this civil suit on June 29, 2022, alleging twelve different claims, including several APA violations and Fourth, Seventh, and Tenth Amendment violations.[51] Plaintiffs sought declaratory and injunctive relief against the Act.[52] They filed their Motions for Temporary Restraining Order and Preliminary Injunction on the same day – June 29, 2022.[53]

On June 30, 2022, Plaintiffs filed their Memorandum in Support of both motions.[54] The Motion for Temporary Restraining Order was denied by the Court.[55] Defendants, HISA and

---

[45] [Id. at p. 25-26].
[46] [Id. at p. 23-24].
[47] [Id. at p. 22]. Defendant HISA is citing to their own statistics in their memorandum that are based on their factual records.
[48] [Id. at p. 23].
[49] [Id.]
[50] [Id.]
[51] [Doc. No. 1, p. 1, 48-54].
[52] [Id. at p. 2].
[53] [Doc. No. 2].
[54] [Doc. No. 6].
[55] [Doc. No. 14].

FTC, then filed their Responses in Opposition to Plaintiffs' Motion on July 15, 2022.[56] A Reply was filed by Plaintiffs on July 22, 2022.[57]

The issues are briefed, and the Court is prepared to issue a ruling.

## II.    STANDING

This Court must determine whether it has judicial power to hear this case under the doctrine of "standing." Under the doctrine of "standing," a federal court has judicial power only where a plaintiff has demonstrated that it (1) suffered an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable decision.[58] The party invoking federal jurisdiction has the burden of establishing these three elements.[59] When there are multiple parties in a case, a court need only determine that one party has standing in the action for the court to hear the case.[60] This applies when the parties' participation makes no difference to the merits of the case, or, in other words, the parties are essentially raising the same issues and making the same arguments.[61]

If a State is a litigant in the case, like the case before this Court, the States are afforded "special solicitude" in satisfying the burden of traceability and redressability under a traditional standing inquiry when the States' claims and injury meet certain criteria. [62] Specifically, under special solicitude standing, a State must allege that a defendant violated a congressionally accorded procedural right that affected the state's "quasi-sovereign" interests.[63]

---

[56] [Doc. Nos. 27, 29].
[57] [Doc. No. 36].
[58] *Lujan v. Defenders. of Wildlife*, 504 U.S. 555, 560–61 (1992).
[59] *Id.* at 561.
[60] *Comcast Corp. v. F.C.C.,* 579 F.3d 1, 6 (D.C. Cir. 2009) (*citing Ry. Labor Executives' Ass'n v. United States*, 987 F.2d 806. 810 (D.C. Cir. 1993).
[61] *Id.*
[62] *Massachusetts v. E.P.A.*, 549 U.S. 497, 520 (2007); *Texas v. United States*, 809 F.3d 134, 151–55 (5th Cir. 2015), as revised (Nov. 25, 2015).
[63] *Massachusetts*, 549 U.S. at 520–21; *Texas*, 809 F.3d at 151–55.

In this case, the Court finds it necessary to address the standing issue under a normal inquiry for both State and non-State Plaintiffs and under a "special solicitude" inquiry for the State Plaintiffs. The Court addresses each below.

### A.  Normal Standing Inquiry

The Plaintiff States have standing under the normal inquiry because they are entitled to special solicitude. The non-State Plaintiffs must meet the three criteria for normal inquiry standing.

### 1. Injury in Fact

A plaintiff seeking to establish injury in fact must show that it suffered "an invasion of a legally protected interest" that is "concrete," "particularized," and "actual or imminent, not conjectural or hypothetical."[64] For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way."[65] A "concrete" injury must be "de facto," meaning it must "actually exist."[66] "Concrete" is not, however, necessarily synonymous with "tangible." Intangible injuries can be "concrete."[67]

The plaintiff's injury need not have actually occurred, but it must be at least "imminent."[68] For a threatened future injury to be sufficiently imminent, there must be a substantial risk the injury will occur.[69] This can be shown by evidencing a systematic practice.[70] If a suit is "challenging the legality of government action or inaction … [and] the plaintiff is

---

[64] *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), *as revised* (May 24, 2016).
[65] *Id.* at 1548.
[66] *Id.* at 1548-49.
[67] *Id.*
[68] *Lujan v. Defs of Wildlife*, 504 U.S. 555, 556 (1992)
[69] *Crawford v. Hinds Cnty. Bd. Of Supervisors*, 1 F.4th 371, 375 (5th Cir. 2021) (*citing Stringer v. Whitley*, 942 F.3d 715, 721 (5th Cir. 2019).
[70] *Id.*

himself an object of the action at issue … there is little question that the action or inaction has caused him injury."[71]

All Plaintiffs allege they will suffer injuries "in the form of vast destruction of the horseracing industry through individual penalties and systematic changes to the longstanding regulatory structure and revenue model."[72] They argue that there will be financial costs so great that numerous participants will be driven out of business if the rules are enforced.[73] The Plaintiff States allege tax revenue, job industry, regulation, and loss of police power injuries following the implementation of the HISA rules.[74] The Plaintiff Organizations allege that, because they represent covered persons, they have standing to protect their members against revenue, physical, economic, and breeding injuries.[75] The Individual Plaintiffs allege economic, disqualification, suspensions, and possibly being driven out of the industry injuries.[76]

Defendants argue there is no injury to Plaintiffs because (1) none of the alleged injuries have "transpired over the two weeks in which the rules have already been in effect," (2) the harms are self-inflicted under the rules, (3) there is not a challenge to the Act's scope, (4) the injuries derive from the Act enacted by Congress itself, not any of the implemented rules, and (5) the mere apprehension or fear of future harm does not establish a concrete injury.[77] Defendants maintain that, because the private Plaintiffs' allegations "'rest on mere conjecture about possible governmental actions' that may or may not affect them in the manner they anticipate," they are

---

[71] *Lujan*, 504 U.S. at 561-562.
[72] [Doc. No. 6, p. 44].
[73] [Id. at 45].
[74] [Id. at p. 23-24].
[75] [Id. at 24-26].
[76] [Id. at 26-27].
[77] [Doc. Nos. 27, p. 52, 55-56; 29, p. 11-12, 22-23].

simply requesting an advisory opinion from this Court, and this Court cannot give such an opinion.[78]

The applicable time period under this element is not whether the injury has occurred since the implementation of the rules, but whether it was imminent at the time the complaint was filed. While Defendants' argument that the injuries have not occurred and that the private Plaintiffs' fear of future injury might go to the success on the merits, they do not negate Plaintiffs' standing. Plaintiffs are challenging the legality of government action and are objects of said action. All Plaintiffs are participants in the horseracing industry, making them directly affected by regulation actions. Thus, there is "little question that the action has caused injury" or has a substantial risk of causing injury to said Plaintiffs.

Plaintiffs' alleged injuries are sufficiently "concrete," "particularized," and "imminent." Plaintiff States have satisfied their burden by alleging economic harm and harm to the industry itself due to the government actions. The Plaintiff Organizations have established that, where their members have standing to sue in their own right and interest, the organizations have standing to protect those concrete interests. The Individual Plaintiffs have established they will suffer certain concrete harms as covered persons under the HISA rules.

The Court finds that all Plaintiffs have satisfied this element of normal inquiry standing.

### 2. Traceability

Plaintiffs must show a "fairly traceable" link between their alleged injuries and the HISA rules. As a general matter, the causation required for standing purposes can be established with

---

[78] [Doc. No. 29, p. 23, 25].

"no more than de facto causality."[79] The plaintiff need not demonstrate that the defendant's actions are "the very last step in the chain of causation."[80]

Here, there is an obvious link between the HISA rules and Plaintiffs' alleged injuries. All the above alleged injuries are "fairly traceable" to the rules enacted thus far by HISA and the FTC.

### 3. Redressability

The redressability element of standing requires plaintiffs to demonstrate "a substantial likelihood that the requested relief will remedy the alleged injury in fact."[81] This element can be satisfied by demonstrating a threatened future injury.[82] "When a suit is one challenging the legality of government action … there is ordinarily little question that … a judgment preventing or requiring action will redress" the injury to a plaintiff that is an object of the action at issue.[83]

Because Plaintiffs are challenging the legality of government action in the form of HISA and the FTC approving and implementing rules, Plaintiffs have demonstrated a substantial likelihood that the requested relief would remedy the alleged injuries in fact. If Plaintiffs are successful in having the HISA rules declared invalid, this would redress their alleged injuries.

### B.  Special Solicitude

The Plaintiff States have standing because they are entitled to special solicitude. Plaintiff States have standing to challenge the HISA rules because the Agency Defendants' actions could harm the Plaintiff States' sovereign, proprietary, and *parens patriae* interests. Both States argue that the horseracing industry's economic impact on the State and its citizens establish the

---

[79] *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2556 (2019).
[80] *Bennett v. Spear*, 520 U.S. 154, 169–70 (1997).
[81] *El Paso Cty., Texas v. Trump*, 982 F.3d 332, 341 (5th Cir. 2020), *cert. denied sub nom. El Paso Cty., Texas v. Biden*, 141 S. Ct. 2885 (2021), *reh'g denied*, 142 S. Ct. 51 (2021).
[82] *Crawford*, 1 F.4th at 375.
[83] *Lujan*, 504 U.S. at 561-562.

significant interests of the State required for standing.[84] They further argue that the longstanding regulatory regime of using the States' police power over the horseracing industry will be put in imminent danger.[85] The disruptions caused by the rules to the horseracing industry will allegedly harm all participants, including citizens and organizations within the States, entitling them to standing.[86] Taking away the States' police power, "threatening the integrity of races," and upending the funding scheme are sufficient economic harm to give the States standing.[87]

Defendants combat the Plaintiff States' special solicitude standing by arguing that "States have no *parens patriae* standing to protect its inhabitants 'from the operation of' a federal statute."[88] Defendants argue that Plaintiff States base their standing on the effects of the Act, not any particular rule HISA implements, and, because "'Congress may withdraw specified powers from the States by enacting a statute containing an express preemption provision,'" the States' claims are nonjusticiable.[89]

This case is like *Texas v. United States* where Texas sued to prevent the Department of Homeland Security from implementing a DAPA Program.[90] The Fifth Circuit determined Texas had standing under "special solicitude" because states may have standing based on federal assertions of authority to regulate matters they believe they control, federal preemption of state law, and interference with the enforcement of state law.[91] The Plaintiff States here are challenging the federal HISA rules that preempt state law and assert authority over the horseracing industry, which Plaintiff States believe they control. Both Louisiana and West

---

[84] [Doc. No. 6, p. 23-24].
[85] [Id.]
[86] [Doc. No. 36, p. 7].
[87] [Id. at p. 8].
[88] [Doc. No. 29, p. 19].
[89] [Id. at p. 19-21].
[90] *Texas*, 809 F.3d 134.
[91] *Id.* at 153; *See also Texas v. Equal Emp. Opportunity Comm'n*, 933 F.3d 433 (5th Cir. 2019) (the Fifth Circuit found standing for Texas after regulatory changes, pressure to change state law, and procedural right deprivations).

Virginia argue the states' regulatory schemes and the economic impact of the horseracing industry establish standing. This mirrors Texas's claims against the Department of Homeland Security. Thus, like in *Texas*, Plaintiff States have special solicitude standing here.

This Court finds that Plaintiff States have proven standing under both the normal inquiry and special solicitude. Plaintiff States assert a congressionally bestowed procedural right - the APA - and the agency actions at issue affect the Plaintiff States' quasi-sovereign interests (damage to citizens, the State, businesses, loss of funds, and/or protection of State laws).[92] Therefore, any possible infirmity in Plaintiff States' demonstration of traceability or redressability under a normal inquiry are remedied by the Plaintiff States' special solicitude standing.

In conclusion, this Court finds all Plaintiffs have standing. Because the parties are essentially raising the same issues and making the same arguments, it was only necessary to determine standing for one Plaintiff. However, this Court finds that (1) Plaintiff States are entitled to both special solicitude and normal inquiry standing, and (2) the remaining Plaintiffs are entitled to normal inquiry standing. Thus, this Court has judicial power to hear this case.

## III.    LEGAL STANDARD AND ANALYSIS

Obtaining a preliminary injunction is an "extraordinary and drastic remedy" that a movant is only entitled to if four factors are established.[93] The four factors a movant is required to establish are: (1) a substantial likelihood of success on the merits, (2) the movant is likely to suffer irreparable harm without preliminary relief, (3) the possible injury to the movant outweighs the possible harm to the other party, and (4) an injunction is in the public interest.[94] If

---

[92] *Massachusetts*, 549 U.S. at 519-20.
[93] *Munaf v. Green*, 553 U.S. 674, 689-90 (2008); *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).
[94] *910 E. Main LLC v. Edwards*, 481 F. Supp. 3d 607, 613-614 (W.D. La. 2020).

a plaintiff fails to meet its burden on any of these factors, a preliminary injunction cannot be granted.[95]

Plaintiffs make numerous constitutional, statutory, and procedural arguments that the implementation of FTC-approved rules proposed by HISA are invalid. As previously noted, for purposes of this Motion for Preliminary Injunction, this Court finds it only necessary to examine Plaintiffs' claims that directly attack the lawfulness of the rules. These claims are that (1) The fourteen-day period for notice and comment for each set of approved rules was insufficient under the APA and (2) Several rules go beyond the statutory authority given to HISA and the FTC.[96]

### A.  Likelihood of Success on the Merits

The first prong of the test for a preliminary injunction is to determine if Plaintiffs sufficiently established a substantial likelihood of success on the merits.[97] If a claim does not survive this first prong, it is unnecessary for a court to look any further.[98] "Though there is no particular degree of likelihood of success that is required in every case, the party seeking a preliminary injunction must establish at least some likelihood of success on the merits before a court may proceed to assess the remaining elements."[99]

The Court will analyze whether Plaintiffs have met this prong for each claim below.

### 1. Fourteen-Day Notice and Comment Period

"The APA establishes the procedures federal administrative agencies use for 'rule making.'"[100] Title 5 U.S.C. § 553 of the APA lists one such required procedure: federal agency rules are to undergo a notice and comment period unless they are exempt.[101] The federal agency

---

[95] *Id.*; *See Planned Parenthood Ass'n of Hidalgo Cnty. Tex., Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012).
[96] All other issues will be addressed when the merits are addressed.
[97] *Jefferson Cmty. Health Care Centers, Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 624-25 (5th Cir. 2017).
[98] *Id.*
[99] *Id.* at 626 (*citing State of Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975).
[100] *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 95 (2015) (*quoting* 5 U.S.C. § 551(d)).
[101] *Texas v. United States*, 524 F. Supp. 3d 598, 657 (S.D. Tex 2021) (*citing* 5 U.S.C. § 553(a)-(b)).

is required to give general notice of proposed rulemaking to be published in the Federal Register not more than thirty days before the proposed rules' effective date and to give interested persons an opportunity to participate in the rulemaking process through submission of written data, views, or arguments.[102] This comment requirement allows for "meaningful public comment on issues critical to the rule making process."[103] Not all rules issued are required to use the notice-and comment process, however.[104]

Two APA provisions allow for exemptions to the notice and comment requirement: one for interpretative rules, general statements of policy, or rules of organization and one for good cause.[105] Because the challenged rules are not "statements as to what [HISA] thinks the statute or regulation means," the first exception is inapplicable.[106] The good cause exception is applicable to this case, and it allows for two types of exceptions.[107] One allows an agency to bypass notice and comment when it finds, for good cause, "that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest."[108] The other provides an exception to the number of days in the comment period.[109] Because Plaintiffs specifically attack the number of days allowed by the FTC for comments, the second good cause exception is the only one applicable here.

---

[102] 5 U.S.C. § 553.
[103] *Coalition for Workforce Innovation v. Walsh*, No. 1:21-CV-130, 2022 WL 1073346, at *3 (E.D. Tex. 2022) (*citing Save Our Springs v. Babbitt*, 27 F. Supp. 2d 739, 748).
[104] *Id.* at *4 (*citing Perez* 575 U.S. at 96).
[105] *Id.* (*citing* 5 U.S.C. § 553).
[106] *Id.* (*quoting La Union Del Pueblo Entero v. Fed. Emergency Mgmt. Agency*, No. 1:08-CV-487, 2017 WL 2539451, at *7 (S.D. Tex. Feb. 15, 2017).
[107] *Id.* (*citing E. Bay Sanctuary covenant v. Biden*
[108] 5 U.S.C. § 553(b)(B).
[109] *Id.* at (d)(3).

These exceptions to the APA notice and comment requirement "must be narrowly construed," and the burden of showing good cause is on the agency.[110] The good cause exceptions will only apply in emergency situations or if a delay would cause serious harm to life, property, or public safety.[111] Thus, "a good cause exception is essentially an emergency procedure," and it is a high bar for the agency to overcome.[112] Circumstances justifying reliance on this exception are "indeed rare."[113] The Fifth Circuit has recognized that "[t]he APA generally … requires a thirty-day 'waiting period' before a rule becomes effective," if there is no applicable exception to have the comment period waived.[114]

After reviewing the reasons listed by Defendants for restricting the comment periods to only fourteen days for all three approved rule series, the Court finds Plaintiffs are likely to succeed on the merits on this claim. The only urgency given by the Defendants was that the FTC must approve or disprove proposed rules within sixty days of being published in the Federal Register. Further, there were limited comments on all three approved rule series. This does not suggest that the comment period should have been shortened from the general thirty-day waiting period. The FTC could have complied with the normal thirty-day period and still had thirty days to make an approval decision. Thus, the Defendants failed to meet their high burden and to properly follow procedure when implementing the approved rules.

---

[110] *Id.* at *5 (*quoting Texas v. United States*, 809 F.3d 134, 171 (5th Cir. 2015)) and (*citing United States v. Dean*, No. 08-CR-67(LAP), 2020 WL 3073340, at *2 (S.D.N.Y. June 9, 2020)).

[111] *Id.* (*citing United States v. Dean*, No. 08-C-67(LAP), 2020 WL 3073340, at *2 (S.D.N.Y. June 9, 2020)).

[112] *E. Bay Sanctuary Covenant v. Trump (E. Bay I)*, 932 F.3d 742, 777 (9th Cir. 2018) (*quoting United States v. Valverde*, 628 F.3d 1159, 1164-65 (9th Cir. 2010)).

[113] *Council of S. Mountains, Inc. v. Donovan*, 653 F.2d 573 (D.C. Cir. 1981).

[114] *Coalition for Workforce Innovation*, 2022 WL 1073346, at *4 (*quoting United States v. Johnson*, 632 F3d 912, 916 (5th Cir. 2011).

## 2. Statutory Authority of Defendants

Plaintiffs maintain that the HISA rules must be enjoined because they exceed the statutory authority given under the Act. Defendants assert this argument fails because the rules are implementing the Act as written. HISA and the FTC are part of the Executive Branch of government, and they are given their power through Acts of Congress. It is undisputed the Act of Congress giving HISA and the FTC power here is the Horseracing Integrity and Safety Act of 2020. But, an agency "must exercise any discretion accorded it by statute in the manner which Congress has prescribed."[115] "[A]n administrative agency's power … is limited to the authority granted by Congress."[116] Thus, HISA's rules that the FTC approved "must be within the scope of its lawful authority."[117]

While Plaintiffs cite numerous implemented rules that are outside HISA's authority, this Court finds merit in only three. Specifically, this Court will address Rule 2010 of the Racetrack Safety Rules, Rule 8400 of the Enforcement Rules, and the Assessment Methodology Rules.

*First,* the Act gives HISA and the FTC power to regulate "covered horses," defined as:

> Any Thoroughbred horse, or any other horse made subject to this chapter b election of the applicable State racing commission or the breed governing organization for such horse under section 3054(k) of this title, during the period:
> (A) beginning on the date of the horse's first timed and reported workout at a racetrack that participates in covered horseraces or at a training facility; and
> (B) ending on the date on which the Authority receives written notice that the horse has been retired.[118]

---

[115] *Texas*, 524 F. Supp. 3d at 650.
[116] *DHS v. Regents of the U. of Cal.*, 140 S. Ct. 1891, 1926 (2020) (Thomas, J., dissenting)
[117] *Texas*, 524 F. Supp. 3d at 652.
[118] 15 U.S.C. § 3051(4).

The statute provides for *one* specific period on which to include a horse in this definition. In contrast, Rule 2010 provides *four* potential dates on which to base inclusion. Rule 2010 defines a "covered horse" as a Thoroughbred horse:

> Beginning on the earlier of: (1) The date of the Horse's first timed and reported workout at a Racetrack; (2) the date of the Horse's first timed and reported workout at a Training Facility; (3) the date of the Horse's entry in a Covered Horserace; or (4) the date of the Horse's nomination for a Covered Horserace.[119]

Plaintiffs argue HISA's Rule 2010 defines a "covered horse" more broadly than the Act, which will subject more horses and people to HISA regulation.[120] They argue this will subject horses to HISA regulations even if the horse has not met statutory requirements for a timed and reported workout.[121] Plaintiffs further maintain that the expanded definition will preempt more state regulations than the Act was intended to permit.[122]

Defendants maintain that Plaintiffs' argument "misunderstands the statute" because the HISA rule simply connects training and races for the definition of "covered horses."[123] The explicit mention of races in Rule 2010's definition was a consistent clarification for the statute.[124] Defendants further assert Plaintiffs' argument is not ripe because it asserts a "deprivation of rights" that will only arise "at the conclusion of agency proceedings" that may never occur."[125] Plaintiffs had not shown there was a likelihood the definition would expand to affect any non-covered horses.[126] Defendants argue that, even if Plaintiffs' claim is ripe, this

---

[119] 87 Fed. Reg. at 446.
[120] [Doc. No. 6, p. 31].
[121] [Id.]
[122] [Id.]
[123] [Doc. No. 29, p. 34].
[124] [Id. at p. 34-35].
[125] [Doc. No. 27, p. 32].
[126] [Doc. No. 29, p. 35].

Court must give deference to the independent determination by the FTC that the Rule 2010's definition was not inconsistent with the Act.[127]

A government agency only has the authority granted to it by Congress. In enacting Rule 2010, Defendants exceeded the power Congress gave in the Act when defining a "covered horse." By adding language that allowed Defendants' power to begin on the date of the horse's timed and reported workout at a training facility, the date of the first horse's entry into a covered horserace, and the date of a horse's nomination for a covered horserace, Defendants exceeded their authority. Defendants expanded the reach of the definition past the bounds given by Congress. Plaintiffs are likely to succeed on the merits on their claim that Rule 2010 exceeds Defendants' authority.

*Second,* as part of HISA's jurisdiction, the Act allows HISA to develop "rules authorizing access to offices, racetrack facilities, other places of business, books, records, and personal property of covered persons that are used in the care, treatment, training, and racing of covered horses."[128] Rule 8400 takes this definition further by adding the authority to grant free access "to the books, records, offices, facilities, and other places of business of any person who owns a Covered horse or performs services on a Covered Horse."[129]

Plaintiffs argue this additional language has no basis in the statute and unlawfully expands HISA's power.[130] They assert that the Act only allows for the limited authority to investigate,[131] while Rule 8400 empowers HISA to seize personal property, an authority not included in the power to investigate.[132] Defendants argue that the clarification added by Rule

---

[127] [Doc. No. 27, p. 32-33].
[128] 15 U.S.C. § 3054(c)(1)(A)(i).
[129] 87 Fed. Reg. at 4031.
[130] [Doc. No. 6, p. 41].
[131] 15 U.S.C. § 3054(c)(1)(A)(iii) ("other *investigatory* powers").
[132] [Doc. No. 6, p. 41].

8400 "merely adopts its commands."[133] The additional language clarified that investigatory power extended to covered persons under the Act.[134] Defendants maintain the FTC explained that the power to seize "comfortably" fell into the "other investigatory powers of the nature and scope exercised by the state agencies" provision in 15 U.S.C. § 3054(c)(1)(A)(iii).[135] They further argue that, because no commenter or Plaintiff asserted that the proposed rule's seizure power exceeded its authority, Plaintiffs' claim fails.[136]

Again, a government agency only has the authority and power Congress gives it. Congress gave HISA authority to develop rules authorizing access to offices, racetrack facilities, other places of business, books, records, and personal property of covered persons that are used in the care, treatment, training, and racing of "covered horses." This Court believes that Rule 8400 exceeds Defendants' authority by allowing seizure of, not just access to, those records. Additionally, the Act only authorizes limited access to personal property of covered persons that are "used in the care, treatment, training and racing of covered horses." Rule 8400 has no such limitation. It arguably extends HISA access to any other places of business of any person who owns a covered horse. Plaintiffs are likely to succeed on the merits on their claim that Rule 8400 exceeds HISA's statutory authority.

*Third,* HISA was mandated by the Act to establish its own funding structure rather than be funded by Congress.[137] The Act required HISA to create a funding method that ensures each State is "fund[ing] the State's proportionate share" of the programs.[138] The basis of this calculation is to be based on two yearly things: (1) the annual HISA budget and (2) the projected

---

[133] [Doc. No. 29, p. 32].
[134] [Id. at p. 31].
[135] [Doc. Nos. 27, p. 45; 29, p. 32].
[136] [Doc. No. 27, p. 45].
[137] 15 U.S.C. § 3052(f).
[138] *Id.* at § 3052(f)(1)(C)(i) (if the State does not elect to have the funding be paid from the State treasury).

amount of covered racing starts in each State.[139] When collecting fees, HISA is to calculate the monthly fee according to the number of racing starts.[140] The Assessment Methodology rules, however, allow HISA's assessment calculations for a State to also be based on the purse size from races held within that State.[141]

Plaintiffs argue this additional, non-statutory factor added into the assessment methodology unlawfully expands the power of HISA when collecting fees.[142] Plaintiffs assert that, because this affects how HISA fees are imposed and it adds factors to be considered, HISA's assessment methodology "plainly" exceeds its constitutional authority.[143]

Defendants combat this by stating Plaintiffs ignore the FTC's explanation for the methodology.[144] The term "based on" is inherently ambiguous,[145] and, Defendants argue that, because the FTC found the term "based on" not to be limited by a word such as "solely" or "exclusively," the phrase is non-exhaustive.[146] This allows HISA to use the Act as a "foundation" for its methodology and to consider other relevant factors like purse size.[147] Defendants further argue that, if this Court were to adopt Plaintiffs' strict reading of the Act, the States would be even more negatively affected by the proposed rules.[148] Effectively, the Defendants' argument rests on Congress's use of the undefined term permitting the consideration of reasonable factors beyond those explicitly within the Act.[149]

---

[139] *Id.* at § 3052(f)(1)(C)(ii).
[140] *Id.* at § 3052(f)(3)(A).
[141] 87 Fed. Reg. at 9352.
[142] [Doc. No. 6, p. 43].
[143] [Id.]
[144] [Doc. No. 27, p. 47].
[145] [Doc. No. 29, p. 36].
[146] [Doc. No. 27, p. 47].
[147] [Id. at 47-48] (*citing Sierra Club v. EPA*, 356 F.3d 296, 306 (D.C. Cir. 2004); *McDaniel v. Chevron Corp.*, 203 F. 3d 1099, 1111 (9th Cir. 2000).
[148] [Id. at 48].
[149] [Doc. No. 29, p. 37].

Because the FTC acknowledged that HISA's methodology includes "a metric that is not part of the Act's basis of calculation of fees – purses," this Court finds that Plaintiffs have shown a likelihood that the Assessment Methodology Rules are unlawful. While there is limited discretion given to HISA for determining funding, it cannot go outside the authority given to it in § 3052(f). By adding this additional metric, HISA went outside the bounds of the Act and its authority for calculations. Plaintiffs are likely to succeed on the merits on their claim that the Assessment Methodology Rules exceeds HISA's statutory authority.

This Court finds that Plaintiffs have sufficiently established a likelihood of success on the merits for both claims.

### B.  Irreparable Injury

The second requirement for a preliminary injunction is irreparable injury. Plaintiffs must demonstrate "a substantial threat of irreparable injury" if the injunction is not issued.[150] This is a higher burden than that of standing due to the drastic remedy that is a preliminary injunction.[151] For the injury to be "irreparable," plaintiffs need only show it cannot be undone through monetary remedies.[152] This harm must not be a mere "possibility of some remote future injury."[153] The harm must be "more than mere speculation."[154] Being deprived of a procedural right to protect its concrete interests (by violation of the ADA's notice and comment requirements) is irreparable injury.[155]

Each Plaintiff asserts the HISA rules will harm it in numerous ways.[156] The State of Louisiana, the Louisiana State Racing Commission ("LSRC"), the State of West Virginia, and

---

[150] *Texas*, 809 F.3d at 150.
[151] *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).
[152] *Burgess v. Fed. Deposit Inc., Corp.,* 871 F.3d 297, 304 (5th Cir. 2017).
[153] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).
[154] *Janvey v. Alguire*, 647 F.3d 585, 601 (5th Cir. 2011).
[155] *Texas*, 933 F.3d at 447.
[156] [Doc. No. 6, p. 45].

the West Virginia Racing Commission ("WVRC") assert HISA's rules will (1) divest the States of their police powers over the horseracing industry, (2) enlist State employees to help HISA carry out non-State functions, (3) force the States to choose between remitting funds to HISA or losing powers of taxation, and (4) deprive LSRC and WVRC of resources to implement the Act, intruding on State sovereignty and subverting LSRC's and WVRC's ability to perform their duties.[157]

The Plaintiff Organizations claim HISA's rules will (1) affect the distribution of race purse money for the organization members, (2) cause suffering through enforcement of rules inconsistent with longstanding regulations, (3) affect breeders' ability to breed, sell, and earn breeder's purse-based awards, (4) cause unlawful scratches and inability to enter races, and (5) single out specific jockeys for fines and penalties under a points system.[158]

The Individual Plaintiffs assert "untold economic havoc under HISA's threat to drive them out of the industry."[159] Specifically, the owners and trainers allege "disqualification, forfeiture of purse money, termination of business interests, fines, suspension, and increased operational costs."[160] The veterinarians and breeders allege restrictions "in their ability to treat thoroughbred racehorses," incurring of "significant recordkeeping costs," "additional operational expenses," and inhibition "from continuing to breed and sell horses, and from earning breeders' purse-based awards."[161] The jockeys allege "restrictions from entering races, disqualification, fines, and penalties for violations" of rules.[162]

---

[157] [Id. at p. 46-47, 49-51].
[158] [Id. at p. 48-49].
[159] [Id at p. 51].
[160] [Id.]
[161] [Id. at p. 51-52].
[162] [Id. at p. 52].

Defendants maintain that, for the same reasons Plaintiffs do not have standing, they are not entitled to a preliminary injunction.[163] They argue Plaintiffs have not and will not suffer imminent and certain injuries.[164] Defendants argue a preliminary injunction is precluded because of Plaintiffs' (1) delay in seeking injunctive relief, (2) inability to link the alleged harm to the HISA rules, and (3) speculative assertions of injuries.[165]

Citing the Western District of Texas, Defendants argue that the undue delay in seeking this preliminary injunction hours before the HISA rules' effective date indicates there is no "irreparable" harm.[166] Plaintiffs waited three months after FTC approval of the rules to seek a preliminary injunction and withdrew a previous motion for injunctive relief, with no justification for the delay.[167] Plaintiffs also failed to raise issue with the fourteen-day notice and comment period, despite submitting extensive comments and being aware of the dates published by the FTC.[168] Defendants argue these delays "militate against the issuance of a preliminary injunction" and suggest "no apparent urgency" to the supposed harm.[169]

Defendants further argue there is no irreparable harm due to speculation.[170] The alleged injuries have not occurred in the last two weeks since the regulations took effect and Plaintiffs failed to establish any adverse action against them that could be remedied, undermining the harms.[171] Defendants assert that the only issues suffered by the Plaintiff States are due to Plaintiffs' opposition and current appeal cases where they are refusing to implement the Act.[172]

---

[163] [Doc. No. 29, p. 41].
[164] [Id.]; [Doc. No. 27, p. 48-49].
[165] [Doc. Nos. 27, 29].
[166] [Doc. No. 27, p. 49].
[167] [Doc. Nos. 27, p. 51; 29, p. 42-43] (Citing numerous cases where courts have denied injunctive relief based on similar delays, including the 5th Circuit).
[168] [Doc. No. 27, p. 49-50].
[169] [Id. at p. 51]; [Doc. No. 29, p. 42].
[170] [Id. at p. 54].
[171] [Id. at p. 53]; [Doc. No. 29, p. 41].
[172] [Id.]

The Individual Plaintiffs have alleged harms that are based on hypothetical actions that might never occur, which is insufficient to meet the burden of irreparable harm.[173] Thus, the Defendants rest their argument on the fact that: "Because the [] Plaintiffs cannot link their supposed injuries to the implementing regulations they challenge, they cannot claim any injury that is concrete and traceable to the rules at issue, let alone an irreparable one."[174] Defendants further argue that the Fifth Circuit has already rejected the idea that Plaintiffs have suffered irreparable harm in its appeal case.[175]

This Court believes Plaintiffs have shown the necessary requirements for irreparable injury. The alleged conduct by HISA in exceeding its authority given by Congress and alleged violations of the APA, which did not allow sufficient time for public comments, constitute irreparable injury.

### C.  The Balance of Equities and The Public's Interest

The final two elements Plaintiffs must satisfy for a preliminary injunction are that the threatened harm outweighs any harm that may result to the Agency Defendants and that the injunction will not undermine the public interest.[176] These two factors overlap considerably.[177] In weighing equities, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.[178] The public interest factor requires the court to consider what public interests may be served by granting or denying a preliminary injunction.[179]

---

[173] [Id.]
[174] [Id. at 56].
[175] [Id. at p. 52].
[176] *Valley v. Rapides Par. Sch. Bd.,* 118 F.3d 1047, 1051 (5th Cir. 1997).
[177] *Texas,* 809 F.3d at 187.
[178] *Winter,* 555 U.S. at 24.
[179] *Sierra Club v. U.S. Army Corps of Engineers*, 645 F.3d 978, 997–98 (8th Cir. 2011).

Plaintiffs assert that both factors weigh in favor of a preliminary injunction.[180] Because "the public has a strong interest in the proper function of the horseracing industry" and "is served when the law is followed," the only way these factors weigh is in favor of a preliminary injunction.[181] Plaintiffs further assert that Defendants "'have no legitimate interest in the implementation of an unlawful' regulation."[182]

Defendants argue that these factors weigh against the issuance of a preliminary injunction because there is a clear, congressional mandate and substantial compliance from other participants and courts.[183] They assert that the harm to the government and public interest from an injunction halting the implementation of these rules would be great and immediate.[184] Halting the implementation "would 'impede the accomplishment' of [the] statutory purpose, 'which is of unquestionable significance' to the public," especially after the effective date.[185] A preliminary injunction would cause a "great disruption and uncertainty in the administration and implementation of" HISA, contradicting Congress's intent behind the Act.[186]

Defendants further maintain that Plaintiffs' remedy would harm those participants who have already complied with the effective rules, who have already devoted thousands of hours, resources, and support to ensure a smooth implementation.[187] Defendants argue a preliminary injunction would cause chaos in trying to undue the immense steps that have already been taken, leading to "detrimental consequences to the equitable administration of laws" nationwide.[188]

---

[180] [Doc. No. 6, p. 52].
[181] [Id.]
[182] [Id.] (*citing Texas*, 524 F. Supp. 3d at 663).
[183] [Doc. Nos. 27, p. 56; 29, p. 43].
[184] [Doc. No. 29, p. 43].
[185] [Doc. No. 27, p. 57] (*citing United States v. Transocean Deepwater Drilling, Inc.*, 537 F. App'x 358, 364 (5th Cir. 2013)).
[186] [Doc. No. 29, p. 43].
[187] [Doc. No. 27, p. 57-58].
[188] [Id.]; [Doc No. 29, p. 44] (*citing California v. Azar*, 911 F. 3d 558, 583 (9th Cir. 2018)).

This court believes the threatened harm to Plaintiffs outweighs any harm that may result to the Defendants and that a preliminary injunction will not undermine the public interest. This Court is only ruling on the adoption of the rules by HISA, not the constitutionality of the Act. As already noted, HISA has not yet adopted rules addressing the horseracing anti-doping and medication program. HISA has time to address any constitutional authority issues and procedural issues under the APA in re-drafting and re-noticing ruled related to a Racetrack Safety Program.

## IV.    CONCLUSION

Plaintiffs have satisfied all four elements required for a preliminary injunction to be issued. After considering all factors, this Court has determined that a preliminary injunction shall be issued by Plaintiffs against the Defendants.

The geographic scope of the injunction shall be limited to the States of Louisiana and West Virginia, and as to all Plaintiffs in this proceeding.

The requirement of security under Fed. R. Civ. P. 65 is discretionary.[189] Since two Plaintiffs are Sovereign States, Plaintiffs are not required to post security.

For the foregoing reasons,

**IT IS ORDERED** that Plaintiffs' Motion for a Preliminary Injunction [Doc. No. 2] is **GRANTED.** Therefore, the Horseracing Integrity & Safety Authority, Inc., Lisa Lazarus, Steve Beshear, Adolpho Birch, Leonard S. Coleman, Jr., Joseph DeFrancis, Ellen McClain, Susan Stover, Bill Thomason, DG Van Clief, the Federal Trade Commission, Lina M. Khan, Alvaro Bedoya, Noah Joshua Phillips, Rebecca Kelly Slaughter, and Christine S. Wilson, along with their directors, employees and secretaries, are hereby **ENJOINED** and **RESTRAINED** from implementing the Racetrack Safety Rules (Rule 2000 Series), the Enforcement Rules (Rule 8000

---

[189] *Kaepa, Inc. v. Achilles Corp.,* 76 F. 3d 624, 628 (5th Cir. 1996).

Series), and the Assessment Methodology Rules (Rule 8500 Series) as to Plaintiffs State of

Louisiana, State of West Virginia, Louisiana State Racing Commission, Louisiana Horsemen's

Benevolent & Protective Association 1993 Inc., Louisiana Thoroughbred Breeders Association,

Jockeys Guild, Inc., West Virginia Racing Commission, Bernard K. Chatters, Edward J. Fenasci,

Larry Findley, Sr., Warren J. Haran, III, and Gerard Melancon.

  This preliminary injunction shall remain in effect pending the final resolution of this case,

or until further Orders from this Court, the United States Court of Appeals for the Fifth Circuit,

or the United States Supreme Court.

  No security bond shall be required under Federal Rule of Civil Procedure 65.

  MONROE, LOUISIANA, this 26th day of July 2022.

          TERRY A. DOUGHTY
          U.S. DISTRICT JUDGE